UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES OF AMERICA,**       )
                                    )
    v.                              )
                                    )   **Criminal Action No. 18-112-03 (RMC)**
**JAMAR GAGE,**                     )
                                    )
            **Defendant.**          )
_____ )

**MEMORANDUM OPINION**

Jamar Gage requests release pending trial pursuant to 18 U.S.C. § 3142. Mr. Gage is charged by indictment with one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of phencyclidine (PCP) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iv). Indictment [Dkt. 1] at 1-2. The Court held a bond review hearing on November 15, 2018. At its conclusion and upon consideration of the proffers and arguments of counsel and the entire record herein, the Court denied Mr. Gage's motion. This memorandum is prepared in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

## I. FINDINGS OF FACT

### A. Description of the Offense

At the detention hearing, the United States proceeded by proffer based on the Indictment and its detailed opposition brief. Opp'n [Dkt. 48]; *see also* Mot. for Bond [Dkt. 47]. Mr. Gage argued that the proffered evidence related to his sale of low and high-grade marijuana, not PCP, and thereby materially lessened the seriousness of the alleged offense. The Court makes the following findings of fact:

1

Mr. Gage was arrested on April 27, 2018 as part of a "take down" after an investigation of narcotics trafficking in the Washington, D.C. area conducted from approximately November 2015 to March 2018 by the Federal Bureau of Investigation (FBI) and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). The investigation included controlled purchases by confidential sources assisting the FBI and ATF, physical surveillance, interception of wire and electronic communications, and execution of search warrants, among other tools.

Through interceptions of other target phones and those speaking with Mr. Gage's phone, the government concluded that Mr. Gage was engaged in the distribution of PCP. The prosecutor cited numerous calls from March 30, 2017 to April 6, 2017 between Mr. Gage and co-defendant Jahi Marshall wherein they discussed where to meet and Mr. Marshall made requests for "one more," "1 and 1," and a "little boy." Based on the experience of the investigating agents, the term "1 and 1" referred to two one-ounce bottles of PCP and "little boy" and "big boy" referred to half-ounce and one-ounce bottles of PCP, respectively.

Surveillance units observed Mr. Marshall on April 8, 2017, when he discarded a small black bag; when the agents retrieved the bag, they discovered two bottles emanating a strong chemical odor consistent with PCP. Later that same day, the agents observed Mr. Gage stop a short distance away from where Mr. Marshall had discarded the bottles; Mr. Gage was joined in his vehicle by Mr. Marshall for approximately one minute. Based on the content of earlier conversations and the discarded bottles, the agents believe Mr. Gage was restocking Mr. Marshall with PCP on April 8, 2017.

On May 25, 2017 and May 31, 2017, interceptions between Mr. Marshall and Mr. Gage showed the former again requesting "one of them little ones" and "A LIL ONE," which the agents believe to be half ounce bottles of PCP.

Interceptions also picked up calls between Mr. Gage and co-defendants Antonio Tabron and Lamont Johnson. From July 26, 2017 to July 29, 2017, Mr. Gage spoke on multiple occasions with Mr. Tabron and Mr. Johnson seemingly to coordinate a meeting or purchase. Mr. Tabron told Mr. Gage he could probably "get it" from someone else for "either twenty-four or twenty-six." Based on the experience of the agents, the value of 16 ounces of PCP is about $2400 or $2600. In his conversations with Mr. Johnson, Mr. Gage referenced 16th Street and 8th Street, which the agents believe was coded language for 16 or 8 ounces of PCP.

Additional interceptions between Mr. Gage and individuals not also indicted in this case discussed the price for a "16 ounce jawnt," "a swimming pool," and "16 laps," which Mr. Gage notes cost "26." Agents believe these conversations reflect requests for 16 ounces of PCP, often referred to as "water" and which costs approximately $2400 to $2600 in the District of Columbia.

Agents executed a search warrant on Mr. Gage's vehicle on November 28, 2017, and recovered an empty glass vial, which they state is the type of vial commonly used to package and distribute PCP.

### B. Criminal History of the Defendant

Based on a preliminary criminal history calculation prepared by the United States Probation Office for the District of Columbia, the Court has some information about Mr. Gage's criminal history. *See* Gage Pre-Plea Criminal History Calculation [Dkt. 34]. Mr. Gage has four prior criminal convictions and was under supervised probation at the time of the alleged offense on a 2016 conviction for Driving Under the Influence.

3

## II. LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, even if a defendant is not considered a flight risk, his or her danger to the community alone is sufficient reason to order pretrial detention, and vice versa. *See United States v. Salerno*, 481 U.S. 739, 755 (1987). Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2). Where the justification for detention is risk of flight, the decision must be supported by a preponderance of the evidence. *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

Section 3142 imposes a rebuttable presumption of dangerousness or flight risk on certain defendants based on the crimes charged, prior convictions, or similar considerations. *See* 18 U.S.C. § 3142(e)(2), (3). "[T]he indictment alone [is] enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community." *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Mr. Gage has been indicted on one count under the Controlled Substances Act, which carries a maximum term of imprisonment of more than ten years. *See* 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iv). This offense triggers the rebuttable presumption of § 3142(e)(3)(A), which provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure [(1)] the appearance of the person as required and [(2)] the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an

offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A).

Once the rebuttable presumption is triggered, it "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). "While the burden of production may not be heavy, the applicable cases all speak in terms of a defendant's obligation to introduce 'evidence.'" *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016) (citations omitted). Thus, the defendant cannot offer mere speculation, but must present "some credible evidence" or basis to find that the presumption has been rebutted in his case. *Alatishe*, 768 F.2d at 371; *see also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (finding presumptions in section 3142(e) "are 'rebutted' when the defendant meets a 'burden of production' by coming forward with some evidence that he will not flee or endanger the community if released"); *United States v. Taylor*, 289 F. Supp. 3d 55, 64 (D.D.C. 2018) (finding the defendant came "forward with sufficient evidence to meet his burden of production, overcoming but not 'bursting' the presumption").

That said, the burden of persuasion on the issue of detention remains, as always, with the government. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). But even where the defendant offers evidence to rebut the presumption, the presumption is not erased. It is "not a 'bursting bubble' that becomes devoid of all force once a defendant has met his burden of production." *Taylor*, 289 F. Supp. 3d at 63 (quoting *United States v. Jessup*, 757 F.2d 378, 382 (1st Cir. 1985)). Rather, even after the defendant meets his burden of production, the presumption "remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)." *United States v.*

*Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *see also Taylor*, 289 F. Supp. 3d at 63 ("[T]he judicial officer must 'keep in mind the fact that Congress has found that' those charged with the specified offenses are likely to pose a danger to the community." (quoting *Jessup*, 757 F.2d at 384)).

### III. ANALYSIS

#### A. Application of the Rebuttable Presumption

Mr. Gage concedes that the rebuttable presumption in favor of pretrial detention under 18 U.S.C. § 3142(e)(3)(A) applies here, but stresses that the evidence proffered by the United States is consistent with the distribution of low- and high-grade marijuana, not PCP. He contends that a potential conspiracy involving marijuana diminishes the seriousness of the offense. In lieu of pretrial detention, Mr. Gage asks for release without specifying any conditions.

Based on the parties' proffers and arguments, the Court finds that Mr. Gage has not rebutted the presumption that he is a danger to the community and a flight risk. As to the latter, he provided no information as to where he might reside if released and, in fact, noted that prior to his arrest he lived in his car. The only tie to the community discussed by Mr. Gage was his former employment with the Department of Public Works, which he hoped to regain if released.

Mr. Gage has also failed to produce "some credible evidence contrary to the statutory presumption" of his dangerousness were he to be released. *Alatishe*, 768 F.2d at 371.

Congress has determined that individuals who have been charged with drug offenses carrying a maximum term of imprisonment of ten years or more presumptively pose a danger to the community even if they have not engaged in violence. *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (explaining that the presumption "represents Congress's

6

general factual view about . . . the special risks of danger to the community presented by defendants who commit the crimes to which it attaches"). The intercepted calls, which formed the basis for the government's proffer and the Indictment, indicate that its evidence might persuade a jury that Mr. Gage was a low- to mid-level PCP dealer in Washington, D.C.

Accordingly, the undersigned finds that Mr. Gage has not rebutted the presumption that he should be detained before trial.

### B. Application of the Section 3142(g) factors

Even had Mr. Gage fully rebutted the presumption in favor of his detention and the Court were to consider the Bail Reform Act's four § 3142(g) factors, the conclusion would be the same: Mr. Gage should be held without bond pending trial. The four factors that must be considered in making a bond determination are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Further, where, as here, a rebuttable presumption applies, it "remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)," even if the defendant has met his or her burden of production of some credible evidence to the contrary. *Dominguez*, 783 F.2d at 707; *see also Taylor*, 289 F. Supp. 3d at 63.

#### 1. *Nature and Circumstances of the Charged Offense*

The nature and circumstances of the charged offense favor detention. This factor directs a court to consider "the nature and circumstances of the offense charged" as a general matter, but notes especially those instances where "the offense is a crime of violence . . . or involves . . . a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, a grand jury has found probable cause to believe Mr. Gage engaged in a

drug trafficking conspiracy of some breadth from November 2015 to September 2017. Mr. Gage's charge carries a mandatory minimum of ten years imprisonment and up to life, demonstrating the seriousness of the offense. Further, the rebuttable presumption of dangerousness that Congress mandated for such drug offenses reflects its finding that individuals who commit them pose a substantial threat to the safety of the community were they to be released. *See Bess*, 678 F. Supp. at 934. The nature and circumstances of the offense weigh heavily in favor of detention.

### 2. *The Weight of the Evidence*

The weight of the evidence against Mr. Gage is strong and also favors detention. The government has intercepted numerous phone calls which allegedly detail Mr. Gage's involvement in drug trafficking during the course of the investigation. In multiple interactions, Mr. Gage apparently had enough product to supply a customer with 16 ounces of PCP. While Mr. Gage argues that the evidence is actually about the distribution of marijuana, and a jury may credit his defense, the weight of the evidence against him favors detention.

### 3. *The History and Characteristics of Defendant*

The history and characteristics of Mr. Gage also favor detention. Section 3142(g)(3) directs the Court to consider: (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law. 18 U.S.C. § 3142(g)(3)(A)-(B).

The Court appreciates Mr. Gage's proffer that if released Mr. Gage would return to his employment with the Department of Public Works. However, in this context, other elements of his criminal history outweigh his employability. Mr. Gage has prior convictions and it appears from the preliminary criminal history calculation that Mr. Gage was on probation during the alleged conspiracy in this case. This fact undermines his arguments that he would comply with this Court's conditions of release.

    4. *The Danger to the Community*

The fourth factor, the danger to the community posed by Mr. Gage were he to be released, also weighs in favor of detention. The evidence indicates that Mr. Gage may have been a narcotics distributor with many customers in the D.C. area. "The distribution of large quantities of narcotics into the community poses a significant danger to communal safety." *United States v. Holroyd*, No. 17-234, 2018 WL 294529, at *3 (D.D.C. Jan. 4, 2018). Further, the grand jury found probable cause to believe that Mr. Gage engaged in a conspiracy to distribute 1 kilogram or more of PCP, "a particularly dangerous illegal drug," *Taylor*, 289 F. Supp. 3d at 72, and "a drug that is a serious danger to the community." *United States v. Ware*, No. 09-69, 2009 WL 939632, at *2 (D.D.C. Apr. 7, 2009).

## IV. CONCLUSION

Having considered the evidence and the factors in section 3142(g), the rebuttable presumption under section 3142(e)(3)(A), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions exists that would reasonably assure the safety of any other person or of the community if Mr. Gage was released and that he would be a flight risk. Therefore, as stated on the record at the bond hearing on November 15, 2018, Mr. Gage's motion for bond was **DENIED**.

Date: November 28, 2018

ROSEMARY M. COLLYER
United States District Judge